UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mary Milton,

    Plaintiff,

v.

United States Department of
Housing and Urban Development,

    Defendant.

Civil No. 09-2226 (JNE/FLN)

**AMENDED REPORT AND RECOMMENDATION**

_____

Mary Milton, *pro se*, for Plaintiff.
Robyn A. Millenacker, Assistant United States Attorney, for Defendant.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on February 4, 2010 on Defendant's Motion to Dismiss and Alternative Motion for Summary Judgment [#9].[1] The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that Defendant's Motion to Dismiss and Alternative Motion for Summary Judgment [#9] be **GRANTED**.

## I.    FINDINGS OF FACT

In December 2003, Plaintiff Mary Milton purchased a foreclosed property owned by the U.S. Department of Housing and Urban Development ("HUD") under its Single Family Mortgage Insurance Program. (Roland Decl. ¶ 3, 8-9.) Under the program, HUD seeks to immediately sell homes owned under the program in an unrenovated, "as-is" condition. (Roland Decl. ¶3-4; *see also*

---

[1] Plaintiff Mary Milton did not appear at the motion hearing. She instead sent a letter to the Court stating, "I will not be in court because I find it a waste of time and money on parking." (Doc. No. 21.)

24 C.F.R. §291.100(c)(1)-(3).) At the time of Milton's purchase, HUD contracted with a company called First Preston to manage and market properties owned by HUD under the Single Family Mortgage Insurance Program. (Roland Decl. ¶ 5-6.) When Milton purchased the house in St. Paul Park, Minnesota, she dealt directly with First Preston. (Roland Decl. Ex. D-1.) On December 3, 2003, Milton signed two forms stating she knew the property was purchased "as-is," and also signed a form entitled "For Your Protection: Get a Home Inspection" that discusses the importance of arranging for a home inspection prior to closing on a property. (Roland Decl. Ex. D-1.)

It appears that Milton did not arrange for a home inspection and later discovered that her new home had previously housed a methamphetamine lab. (Roland Decl. ¶10-12.) Although the foreclosing lender, Midland Mortgage Company, had agreed to remediate the property prior to Milton's move-in date, the remediation was not completed on time. (Roland Decl. Ex. D-2.) First Preston sent Milton a letter dated January 16, 2004 informing her of the status of the remediation and asking her to sign the letter and send it back if she wanted the remediation to be finished. *Id.* Milton did eventually sign the letter. *Id.*

After the remediation was completed, Milton moved into the residence. (Roland Decl. Ex. D-4.) In the interim, however, Milton claims to have incurred expenses associated with the delayed move. Throughout 2004, Milton and First Preston continued to correspond regarding the property and Milton's dissatisfaction with the purchase process. (Roland Decl. Exs. D-3-D-6.) First Preston initially offered in February 2004 to repurchase the property at cost and to pay Milton $5,000 for interim housing expenses. (Roland Decl. Ex. D-3.) Later, in June 2004 after it became clear that Milton had taken possession of the property, First Preston offered Milton $7,000 in exchange for a release of all claims. (Roland Decl. Ex. D-4.) Milton did not accept these offers, instead counter-

offering in August 2004 to settle the matter for $23,570. (Roland Decl. Ex. D-5.) Milton did not receive a response to the August 2004 counter offer. (Roland Decl. Ex. D-6.) Three years later, in June 2007, Milton again wrote to First Preston, proposing a much larger settlement sum including $199,000 for the property and $50,000 for a "massive overcharge." (Roland Decl. D-6.) Then, in May 2008, Milton filed suit against First Preston in Hennepin County's Fourth Judicial District. (Roland Decl. Exs. D-10 - D-12.) Judgment was entered in favor of First Preston on June 18, 2009, as Hennepin County Judge Susan N. Burke determined that Milton's purchase agreement was not with First Preston and therefore First Preston was not a proper defendant. (Roland Decl. Exs. D-11, D-12.) Judge Burke further concluded that even if First Preston was a proper defendant, Milton purchased the property as is and had failed to conduct a home inspection. For those reasons, the court found Milton's damages were hers to bear. *Id.*

Milton subsequently initiated this suit against HUD on July 6, 2009. (Doc. No. 1.) Her claim for $7,570 was brought in state conciliation court, but HUD removed the case to federal court on August 25, 2009. *Id.* Milton's complaint states that she was told by HUDs' agent First Preston that she would be "reimbursed for the move," and that she is asking for a "settlement amount to cover some of her expenses." (Doc. No. 1-1.)

## II. DISCUSSION

### A. Plaintiff's Claim Is Barred By Sovereign Immunity; Therefore The Complaint Must Be Dismissed For Lack of Jurisdiction

Milton's claims stem from the allegation that she was not told the property she purchased from HUD had previously been used as a methamphetamine lab. She was also allegedly not told that the remediation was incomplete at the time she intended to occupy the property. As a result, Milton was forced to vacate the property while the remediation was completed and claims to

3

have been damaged by the misrepresentation because she incurred additional expenses. Milton is now seeking remuneration from HUD. Although Milton's Complaint states no specific legal basis for her claim, the Court concludes that the only appropriate legal basis is a tort claim for misrepresentation. The tort of negligent misrepresentation, as used in the Federal Tort Claims Act ("FTCA"), is the failure to use due care in obtaining and communicating information upon which a party may reasonably be expected to rely in the conduct of his economic affairs. [2] *United States v. Neustadt*, 366 U.S. 696, 706-07 (1961).

Although the United States may not be sued without its consent pursuant to the doctrine of sovereign immunity, the FTCA operates as a limited waiver of sovereign immunity. 28 U.S.C. §§ 2671-680; *Audio Odyssey, Ltd. v. United States*, 255 F.3d 512, 516 (8th Cir. 2001). Liability on the part of the United States for the tort of misrepresentation, however, was expressly excluded from the FTCA.[3] 28 U.S.C. § 2680(h). Therefore, Milton's claim does not fall under the terms of the FTCA and is therefore is barred by sovereign immunity. Consequently, Milton's claim must be dismissed for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *Neustadt*, 366 U.S. at 711.

**B. Plaintiff's Claim is Barred Because She Failed To Exhaust Administrative Remedies; Therefore the Complaint Must Be Dismissed For Lack of Jurisdiction**

---

[2] Plaintiff does not claim that the alleged misrepresentation was intentional, leaving negligence as the only possible basis for her claim.

[3] "The provisions of this chapter ... shall not apply to – Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, *misrepresentation*, deceit, or interference with contract rights ..." 28 U.S.C. § 2680(h) (emphasis added).

4

The courts of the United States lack jurisdiction over claims cognizable under the FTCA unless a plaintiff has first pursued certain administrative remedies. "Presentment of an administrative claim is jurisdictional and must be pleaded and proven by the FTCA claimant." *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993); 28 U.S.C. § 2675(a) (action improper "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency"). "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).

Here, Milton has failed to exhaust her administrative remedies as required. She has brought forth no evidence showing that she presented a claim to HUD or that HUD made a final decision on any claim. Instead, HUD has brought forth evidence showing that Milton never submitted a claim to HUD. (Culpepper Decl. ¶¶ 1-3.) Thus, even if Milton's claim for misrepresentation was not expressly excluded from the FTCA, Milton has failed to fulfil the necessary administrative prerequisites for jurisdiction and her claim must be dismissed for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

**C. Plaintiff Failed to Name The Correct Defendant**

A federal agency cannot be sued in its own name under the Federal Tort Claims Act; the United States itself is the only proper defendant. *Duncan v. Dep't of Labor*, 313 F.3d 445, 447 (8th Cir. 2002) (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 476-77(1994)). Thus, as Milton has

named a federal agency – HUD – as the Defendant instead of the United States, her claim must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction. *Id.*

### D. Plaintiff's Claim Must Be Dismissed For Insufficient Service Of Process

Under Federal Rule of Civil Procedure 12(b)(5), improper service of process may be grounds for dismissal. Fed. R. Civ. P. 12(b)(5). To serve the United States and federal agencies, a party must 1) deliver (by some means) a copy of the summons and complaint to the United States attorney for the district where the action is brought and 2) send a copy of the summons and complaint by registered or certified mail to the Attorney General of the United States at Washington, D.C., and the agency. Fed. R. Civ. P. 4(j). Milton failed to meet these requirements. She served HUD's Minneapolis field offices on July 27, 2009, but did not serve the U.S. Attorney for Minnesota or the U.S. Attorney General in Washington, D.C.. (Doc. No. 1.) Thus, Milton's claim must be dismissed for insufficient service of process.

### III. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Defendant's Motion to Dismiss and Alternative Motion for Summary Judgment [#9] be **GRANTED**.

DATED: March 22, 2010                   *s/ Franklin L. Noel*
                                                     FRANKLIN L. NOEL
                                                     United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **April 5, 2010**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen days after service thereof. All briefs filed under the rules shall be

limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **April 5, 2010,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.